1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

IN THE MATTER OF THE EXTRADITION

OF PATRICK JOSEPH MCCABE.

_____/

No. 10-XR-90622 NJV

**ORDER GRANTING REQUEST FOR
CERTIFICATE OF EXTRADITABILITY**

     The United States, representing the Republic of Ireland, requests the extradition of Patrick Joseph McCabe, an Irish citizen, for nine charges of indecent assault on six minors and one charge of attempted indecent assault on one minor.  The primary issue in dispute is whether the charged offenses are extraditable offenses under the extradition treaty between the United States and Ireland. Having considered the arguments of the parties and the papers submitted, the Court **GRANTS** the request for a certificate of extradition.

## I. BACKGROUND

**A.    Facts**

     Patrick Joseph McCabe (the fugitive) is wanted by the Republic Of Ireland on nine counts of indecent assault and one count of attempted indecent assault, all crimes against the Common Law of the Republic of Ireland.  Exhibit 1, Extradition Request by Ireland for Patrick McCabe at parts 1(c), 2(b), and 2(c) (available at Doc. No. 1, pages 36-95) ("Extradition Request").  Between January 1971 and July 1979, the fugitive was a Catholic priest attached to the Pro-Cathedral parish church in Dublin, Ireland.  *Id*. at part 3(c), Affidavit of Helena Kiely of the Office of the Director of Public Prosecutions in Ireland ¶ 13 (Apr. 30, 2010) (available at Doc. No. 1, page 95); Compl. at 2 (Doc. No. 1).  The fugitive's residence adjoined the Cathedral, and he taught at the Central Model

**United States District Court**
For the Northern District of California

1   School, which is located on the same street as the Cathedral. Compl. at 2. The fugitive

2   subsequently moved to Dublin's Artane Parish where he served as a Catholic priest from July 14,

3   1979 to September 5, 1981. *Id.*; Ex. 1, Extradition Request at part 3(c), Affidavit of Peter

4   McCormick of the Office of the Director of Public Prosecutions in Ireland ¶ 36 (May 6, 2010).

5   According to the request for extradition lodged by the Republic of Ireland with the United States,

6   during this time period, the fugitive sexually molested six young school boys. Ex.1, Extradition

7   Request at parts 1(c), 2(b), and 3(c).

8        In 1988, Irish police filed their first allegations of misconduct against the fugitive, Patrick

9   McCabe. Ex.1, Extradition Request at part 2(b) (available at Doc. No. 1, page 52). That same year,

10  the fugitive left the jurisdiction in which the charges had been lodged. *Id.* Because the fugitive was

11  unavailable for a police interview, the Irish Director of Public Prosecutions (DPP) declined to

12  pursue the case. *Id.* The fugitive's location remained unknown to Irish law enforcement until 2003,

13  when Interpol reported that he was living in Alameda, California. *Id.* Thereafter, Irish authorities

14  attempted to interview the fugitive, but he refused. *Id.*; *see* Exhibit 3, Affidavit of Detective Garda

15  John Clancy of the National Bureau of Criminal Investigation ¶ 1 (Aug. 30, 2010) (available at Doc.

16  No. 68-2). Consequently, the Irish DPP again declined to prosecute. Ex.1, Extradition Request at

17  part 2(b) (available at Doc. No. 1, page 52).

18       After initially refusing to meet with officers of *An Garda Siochana*, the national police

19  force of the Republic of Ireland, the fugitive agreed to be interviewed by *An Garda* in November of

20  2007 in Alameda, California. *See* Ex. 3, Clancy Aff. ¶¶ 1, 1.2, 1.4; Exhibit 4, Affidavit of Inspector

21  Kevin Lavelle of *An Garda Siochana* (Aug. 30, 2010) (available at Doc. No. 68-3). McCabe was

22  interviewed over three days from November 7-9, 2007. *See* Ex. 3, Clancy Aff. ¶ 1.4; Ex. 4, Lavelle

23  Aff. at 1. At the interview, the fugitive confirmed that he had been a priest in the Archdiocese for

24  the City of Dublin, Ireland from 1961-1983. Ex. 3, Clancy Aff. ¶ 2. The fugitive stated that he had

25  left the priesthood against his will in 1988 because of allegations of child sexual abuse. Ex. 4,

26  Lavelle Aff. at 2; *see* Ex. 3, Clancy Aff. ¶ 2.

27       The fugitive admitted that he had a fetish for formal shirts and ties worn by young boys,

28  that these images sexually aroused him, and that he was unable to control his urges. *See* Ex. 3,

**United States District Court**
For the Northern District of California

1   Clancy Aff. ¶ 3.2; Ex. 4, Lavelle Aff. at 3.  He further admitted that he would obtain "satisfaction"

2   from "an embrace and being close to a boy."  Ex.1, Extradition Request at part 2(b) and 3(c),

3   McCormick Aff. ¶ 37 (available at Doc. No. 1, pages 58 and 91).  The fugitive also stated that

4   "sometimes I ejaculated unwarily, and sometimes I was aware."  *Id.*  The fugitive went on to further

5   state that he had been treated for these fetishes in therapy centers in both England and the United

6   States.  Ex. 4, Lavelle Aff. at 4; Ex.1, Extradition Request at part 3(c), McCormick Aff. at ¶ 36

7   (available at Doc. No. 1, page 91).

8           The fugitive made additional admissions when confronted with the statements of individual

9   victims.  When informed of the statement of James Moran, who accused the fugitive of trapping him

10  in an automobile and attempting to sodomize him in 1977 (when Moran was 13 or 14 years old), the

11  fugitive stated:  "He came to see me.  He met all my requirements to match up with my fetish and I

12  embraced and *fondled* him with no further sexual behavior."  Ex. 4, Lavelle Aff. at 3 (emphasis

13  added); *see* Ex.1, Extradition Request at part 3(c), McCormick Aff. at ¶ 17 (available at Doc. No. 1,

14  page 87).  The fugitive further stated that Moran was "handsome, and had a nice shirt and tie, maybe

15  a suit.  I don't know."  Ex.1, Extradition Request at part 2(b) (available at Doc. No. 1, page 52).

16  Based on this evidence, along with the complaining victims' statements and the *Garda*'s

17  investigation, the Irish DPP concluded that the fugitive should be prosecuted in the Republic of

18  Ireland.  Ex.1, Extradition Request at parts 1(c), 2(b), and 3(c) (available at Doc. No. 1, pages 42-44,

19  46-58, and 85-95).

20          1.   Offenses 1 and 2:  Thomas Lawrence

21          Based on the affidavit of Peter McCormick, a Solicitor and Professional Officer in the

22  Office of the Director of Public Prosecutions in the Republic of Ireland (available at Doc. No. 1,

23  pages 85 through 92), that was admitted into evidence at the hearing in this matter, and the

24  supporting documents also admitted at the hearing in this matter, the Court finds that probable cause

25  was established to prove that the fugitive Patrick Joseph McCabe committed extraditable offenses in

26  the Republic of Ireland as follows:  Thomas Lawrence (Lawrence) was born July 1, 1961 and

27  attended Dublin's Central Model School from January 1, 1973 to June 30, 1975.  Ex.1, Extradition

28  Request at part 3(c), McCormick Aff. ¶¶ 5, 9 (available at Doc. No. 1, pages 85-86).  During this

time, the fugitive, a then Roman Catholic priest, regularly attended the school to give religious instruction. *Id*.

Lawrence attended the school when he was eleven to thirteen years old. One day during this period, the fugitive came upon Lawrence in the hallway of the school. *Id*. at ¶ 6 (available at Doc. No. 1, pages 85-86). The fugitive backed Lawrence up against the wall and started rubbing the fugitive's groin against Lawrence's stomach. Lawrence felt that the fugitive's penis was almost immediately erect. The fugitive then took his own penis in his hand and kept pushing Lawrence's head around to look at his penis. The fugitive then grabbed Lawrence's hand and pushed it down to touch the fugitive's penis, and then made Lawrence squeeze the fugitive's penis. The fugitive ejaculated and was later seen by Lawrence wiping the floor and wall with his handkerchief. This incident is the basis for the first offense.

Thereafter, the fugitive again came upon Lawrence in the school. *Id*. at ¶ 7 (available at Doc. No. 1, page 86). The fugitive put one hand on top of a coat rack where Lawrence was standing and started to push himself against Lawrence. The fugitive crouched down and pushed his groin against Lawrence. The incident ended when Lawrence tripped on the rail of the coat rack and fell on the ground backwards causing a noise that brought out the school principal. The fugitive then left the area. This incident is the basis for the second offense of attempted indecent assault.

   2. <u>Offenses 3, 4 and 5: Andrew Canavan</u>

Based on the affidavit of Helena Kiely, a Solicitor and Professional Officer in the Office of the Director of Public Prosecutions in the Republic of Ireland (available at Doc. No. 1, pages 93 through 95), that was admitted into evidence at the hearing in this matter, and the supporting documents also admitted at the hearing in this matter, the Court finds that probable cause was established to prove that the fugitive Patrick Joseph McCabe committed extraditable offenses in the Republic of Ireland as follows: Andrew Canavan (Canavan) was born December 7, 1964. Canavan told authorities in the Republic of Ireland that the fugitive sexually assaulted him three times between December 1974 and September 1977, when he was between the ages of ten and twelve years old. Ex.1, Extradition Request at part 3(c), Kiely Aff. ¶¶ 3-4 (available at Doc. No. 1, page 93).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    During this period of time, Canavan attended mass at the Pro-Cathedral located on

2  Marlborough Street, Dublin in the Republic of Ireland.  The fugitive was a curate attached to the

3  Pro-Cathedral between January 1971 through July 1979.  *Id*. at ¶ 13 (available at Doc. No. 1, page

4  95).  The first incident (Offense 3) occurred when Canavan was approached by the fugitive in the

5  church and brought up to the fugitive's living quarters in the adjacent parochial house on the pretext

6  of discussing a prospective trip to Australia for children.  *Id*. at ¶ 5 (available at Doc. No. 1, page

7  93).  Canavan states that on walking through the hallway to leave the parochial house the fugitive

8  pushed him up against a wall and that the fugitive started to fumble underneath his own clothing.

9  The fugitive then pressed up against Canavan and put his hands around Canavan's bottom, began

10  moving up and down against Canavan, who recalls feeling something bumpy and hard against his rib

11  cage.  Canavan stated that the fugitive began moving fast against him, then slowed down and

12  stopped.  The fugitive then released Canavan and told him to come back next week to see if Canavan

13  had been selected to go to Australia.

14    The second incident (Offense 4) took place approximately a week later.  *Id*. at ¶ 6

15  (available at Doc. No. 1, page 94).  The fugitive brought Canavan back to his private quarters in the

16  parochial house.  The fugitive told Canavan that he was one of the ten lucky children chosen to go to

17  Australia.  Canavan states that in the hallway of the parochial house the fugitive pushed him up

18  against the wall, and that the fugitive fumbled underneath his own clothes and pressed up against

19  Canavan, who remembers feeling something hard pressed against his ribs.  The fugitive then moved

20  his hands onto Canavan's bottom and held them there, while moving fast against him, then slowed

21  down and stopped.

22    The third incident (Offense 5) took place the following Sunday.  *Id*. at ¶ 7 (available at

23  Doc. No. 1, page 94).  The fugitive brought Canavan and his brother James (born August 8, 1962) to

24  his private quarters in the parochial house after mass.  The fugitive told James Canavan to look out

25  the window and not look back into the room.  The fugitive then proceeded to place Canavan on the

26  ground and then proceeded to lay on top of Canavan and began gyrating on top of Canavan.

27  Canavan stated that he could feel something hard pressing against his stomach.  The fugitive started

28  moving up Canavan's stomach and as he did he began kissing and licking Canavan's face.  Canavan

began screaming because he felt crushed and frightened and his brother James said he wanted to leave. The fugitive handed the boys two bottles of orange drink and told them to be good boys and not to tell anyone. Canavan went home and told his grandfather, Edward Sherlock, who became annoyed but said he didn't want any trouble from the priests. *Id*. at ¶ 8 (available at Doc. No. 1, page 94).

James Canavan corroborated Canavan's account of the third incident in a statement to the *An Garda*. *Id*. at ¶ 10 (available at Doc. No. 1, page 94). In addition, the current parish priest of the Pro-Cathedral confirmed that Canavan's description of the layout in the Pro-Cathedral and the parochial house was accurate. *Id*. at ¶ 14 (available at Doc. No. 1, page 95).

3.   Offense 6:  James Moran

Based on the affidavit of Peter McCormick (available at Doc. No. 1, pages 85 through 92), that was admitted into evidence at the hearing in this matter, and the supporting documents also admitted at the hearing in this matter, the Court finds that probable cause was established to prove that the fugitive Patrick Joseph McCabe committed an extraditable offense in the Republic of Ireland as follows:  James Moran (Moran) was born February 3, 1963.  In 1977, Moran was at a boarding school at the Dominican College in Newbridge, which is located in the Republic of Ireland. Ex.1, Extradition Request at part 3(c), McCormick Aff. ¶¶ 14-15 (available at Doc. No. 1, page 87). One day when Moran was 13 or 14 years old, he was told that his uncle was at the college to visit him.  Moran went to the parking lot of the college where he was met by the fugitive, who told Moran that he was a friend of the family.  The fugitive asked Moran if he would get into the fugitive's car for a chat.  Moran stated that once he got into the vehicle, the fugitive lowered his own seat, then proceeded to open his trousers and took out his (the fugitive's) penis.  The fugitive then pulled down Moran's pants and underpants, turned Moran onto his left side and tried to penetrate him but Moran turned back around.  The fugitive tried to force Moran's head down to his groin, but Moran resisted. The fugitive was masturbating while doing this and fondled Moran's groin several times.

Moran further stated that after his father brought him home from school the next day, Moran recited his encounter with the fugitive to a Father Ambrose Farrington. *Id*. at ¶ 16 (available at Doc. No. 1, page 87).  He also told his aunt (Ann Hennessy) about the incident with the fugitive.

The *Garda* took statements from both Father Farrington and Moran's aunt, who both confirmed that they were told by Moran that the fugitive had sexually assaulted him. Moran repeated his allegations against the fugitive in 1987 and 2003. *Id*. at ¶¶ 18-19 (available at Doc. No. 1, page 88).

In November 2007, Irish authorities interviewed the fugitive at the Alameda County Sheriff's Office in California. *Id*. at ¶ 17 (available at Doc. No. 1, pages 87-88); Ex. 3, Clancy Aff.; Ex. 4, Lavelle Aff. The fugitive stated that he recalled Moran, and that he visited Moran at Newbridge College. Ex. 3, Clancy Aff. ¶¶ 2.3-2.4; Ex. 4, Lavelle Aff. at 2-3. The fugitive admitted that he met Moran in his car. Ex. 4, Lavelle Aff. at 3. The fugitive admitted that Moran met his requirements to match up to his "fetish" and that he fondled Moran. *Id*. The fugitive denied touching Moran sexually, and admitted that he touched him only on his clothing. McCormick Aff. ¶ 17 (available at Doc. No. 1, pages 87-88). The fugitive denied having communicated with Moran after the day he assaulted him at Newbridge College. Ex. 3, Clancy Aff. ¶ 2.6. However, after being shown a letter addressed to Moran and an envelope written after the day of the assault, the fugitive acknowledged the documents were in his handwriting. *Id*.; *see* Ex. 4, Lavelle Aff. at 3.

### 4.   Offense 7:  Frank LaCumbre

Based on the affidavit of Peter McCormick (available at Doc. No. 1, pages 85 through 92), that was admitted into evidence at the hearing in this matter, and the supporting documents also admitted at the hearing in this matter, the Court finds that probable cause was established to prove that the fugitive Patrick Joseph McCabe committed an extraditable offense in the Republic of Ireland as follows:  Frank LaCumbre (LaCumbre) was born October 22, 1966 and later attended Artane Church in Dublin, Republic of Ireland. Ex.1, Extradition Request at part 3(c), McCormick Aff. ¶ 23 (available at Doc. No. 1, page 89). The fugitive was a curate at this parish from July 14, 1979 to September 5, 1981 and lived at 16 Brookwood Grove, Artane, Dublin. *Id*. at ¶¶ 23, 25. LaCumbre was 13 or 14 years old when the fugitive sexually assaulted him. *Id*. at ¶¶ 23-25. The fugitive approached him and some friends outside the church in Artane where LaCumbre was riding a new bike. Two to three days after this encounter, the fugitive called LaCumbre's mother and asked if he could take a photograph of her son with his bike for the parish newsletter. LaCumbre came to the fugitive's house at 16 Brookwood Grove at around 6:00 P.M. for the photograph to be

7

taken.  The fugitive put LaCumbre's bike in the garage and took a photograph.  The fugitive then

brought LaCumbre to a back room to have some tea.  The fugitive sat very close to LaCumbre and

put his left arm around LaCumbre's shoulder, pulling LaCumbre closer to him.  The fugitive then

started to rub the inside of LaCumbre's leg with his right hand.  LaCumbre told the fugitive to stop,

but the fugitive continued to rub LaCumbre's leg eventually putting his hand on LaCumbre's penis.

LaCumbre pushed the fugitive's hand away but the fugitive responded by throwing his right leg over

LaCumbre.  LaCumbre managed to push the fugitive off of him and jump off the couch, and

threatened to tell his father.  LaCumbre told the fugitive to open the garage, which he did.

LaCumbre then left the scene.

In a statement to the *Garda*, LaCumbre's mother recalled the fugitive's phone call and

stated that LaCumbre told her about the incident before the complaint was made.  *Id.* at ¶ 25.

### 5.   Offenses 8 and 9:  Barry Ennis

Based on the affidavit of Peter McCormick (available at Doc. No. 1, pages 85 through 92),

that was admitted into evidence at the hearing in this matter, and the supporting documents also

admitted at the hearing in this matter, the Court finds that probable cause was established to prove

that the fugitive Patrick Joseph McCabe committed extraditable offenses in the Republic of Ireland

as follows:  Barry Ennis (Ennis) was born May 22, 1969 and later attended Dublin's Chanel Primary

School.  One day in early 1981 when he was 11 years old and in the school's "sixth class," Ennis

went to the fugitive's home at 16 Brookwood Grove in Dublin to collect leaflets for distribution to

the parish.  Ex.1, Extradition Request at part 3(c), McCormick Aff. ¶¶ 30, 32 (available at Doc. No.

1, page 90); Ex.1, Extradition Request at part 2(b) (available at Doc. No. 1, pages 54-55).  Ennis had

been introduced to the activity by his friend Anthony Corrigan (Corrigan) (see Offense 10 below),

who already had been delivering leaflets for the fugitive.  The fugitive picked up Ennis, Corrigan,

and another boy in a blue Volvo car, and took them to his house.  The fugitive began to show the

boys around his house and eventually took them upstairs to a back room from which the fugitive said

they would see his dog in the garden.  Ex.1, Extradition Request at part 2(b) (available at Doc. No.

1, pages 54-55).  In the room, the fugitive pushed Ennis onto a bed, climbed on top of Ennis, and

rubbed himself up and down Ennis' body.  *Id.*; McCormick Aff. ¶ 32.  Ennis started to cry, and the

**United States District Court**
For the Northern District of California

1  fugitive got off of Ennis.  Corrigan and the other boy tried to comfort Ennis by telling him that it was

2  alright, the fugitive behaved this way often.  Ex.1, Extradition Request at part 2(b) (available at Doc.

3  No. 1, pages 54-55).  This incident is the basis for the eighth offense.

4  Ennis continued to visit the fugitive at his house for the next couple of months.  Each time,

5  the fugitive would touch Ennis inappropriately.  On one such occasion in early 1981, the fugitive

6  brought Ennis into the sitting room in the fugitive's house.  *Id*. (available at Doc. No. 1, page 55).

7  The fugitive kissed Ennis while Ennis had chewing gum in his mouth.  Ennis stated that the fugitive

8  used his tongue to roll the gum around inside Ennis' mouth.  *Id*.; McCormick Aff. ¶ 32.  This

9  incident is the basis for the ninth offense.

10  In his attempt to groom Ennis, the fugitive built a friendship with Ennis' family.  Ex.1,

11  Extradition Request at part 2(b) (available at Doc. No. 1, page 55).  The fugitive stayed for dinner at

12  the Ennis residence on at least one occasion.

13  Motor tax records revealed that the fugitive owned a blue Volvo car from May 1980 to

14  February 1982.  McCormick Aff. ¶ 36.  The fugitive also admitted owning a blue Volvo car to

15  *Garda* authorities in his November 2007 interview in Alameda, California.  Ex. 3, Clancy Aff. ¶ 3.2.

16  6.  Offense 10:  Anthony Corrigan

17  Based on the affidavit of Peter McCormick (Doc. No. 1, pages 85 through 92), that was

18  admitted into evidence at the hearing in this matter, and the supporting documents also admitted at

19  the hearing in this matter, the Court finds that probable cause was established to prove that the

20  fugitive Patrick Joseph McCabe committed an extraditable offense in the Republic of Ireland as

21  follows:  Anthony Corrigan (Corrigan) was born May 4, 1969.  Corrigan states that the fugitive

22  sexually assaulted him in early 1981, before Corrigan's confirmation in March or April 1981.  Ex.1,

23  Extradition Request at part 3(c), McCormick Aff. ¶¶ 31, 33-34 (available at Doc. No. 1, pages 90-

24  91); Ex.1, Extradition Request at part 2(b) (available at Doc. No. 1, pages 56-58).  Corrigan was 11

25  years old at the time, and a student in the school's sixth class.  In early 1981, the fugitive recruited

26  Corrigan to deliver leaflets for the parish.  Corrigan and his friend Barry Ennis (Offenses 8 and 9

27  above) volunteered for the job.  Thereafter, the fugitive called the boys' mothers to get their

28  permission.  The fugitive picked up the boys and drove them to his house at 16 Brookwood Grove in

9

Dublin in the fugitive's blue Volvo car.  The fugitive and Corrigan entered the back bedroom of the house to look out the window for the fugitive's dog.  Corrigan eventually found himself on the bed with the fugitive on top of him.  The fugitive, breathing heavily, kissed Corrigan's cheek and neck. The fugitive rubbed his body up and down Corrigan's.  Corrigan, who felt crushed from his chest to his knees, struggled, and told the fugitive to stop and to get off of him.  The fugitive did not comply. Instead the fugitive opened his own belt, and told Corrigan not to worry.  The fugitive was on top of Corrigan for three or four minutes.  Corrigan never went back to the fugitive's house.

Motor tax records revealed that the fugitive owned a blue Volvo car from May 1980 to February 1982.  McCormick Aff. ¶ 36.  In his November 2007 interview with *Garda* authorities, the fugitive admitted owning a blue Volvo car.  Ex. 3, Clancy Aff. ¶ 3.2.  During this interview, the fugitive was shown a photograph of himself, Corrigan, and Corrigan's mother.  The fugitive identified himself in the photograph, though he was not able to identify Corrigan.  Ex. 3, Clancy Aff. ¶ 3.3; Ex. 4, Lavelle Aff. at 3.  In a statement to *Garda* authorities, Corrigan's mother recalled the fugitive asking her for permission for Corrigan to deliver leaflets.  Ex.1, Extradition Request at part 2(b) (available at Doc. No. 1, page 57).  Per Corrigan's certificate of confirmation obtained by the *Garda*, Corrigan was confirmed at St. Brendan's Church in March 1981 in Coolock, Dublin.  *Id.* (available at Doc. No. 1, page 58).

       7.   <u>Irish Warrants</u>

Between October 2, 2009 and May 5, 2010, two Irish district courts issued ten warrants for McCabe's arrest on nine counts of indecent assault and one count of attempted indecent assault on six minors, all crimes against the Common Law of Ireland.  *See* Ex. 1, Extradition Request at Part 3(a) and 3(b) (available at Doc. No. 1, pages 62-83) (authenticated warrants and informations).

**B.    Procedural History**

Pursuant to an extradition treaty in force between the United States and Ireland, on June 1, 2010, Ireland submitted a formal diplomatic request to extradite McCabe.  Exhibit 2, Declaration of

United States District Court
For the Northern District of California

1  Cameron Holland,[1] attaching Diplomatic Note Number 534/442 (June 1, 2010) and the Extradition

2  Treaty between the United States and the Republic of Ireland of July 13, 1983 ("Treaty") (available

3  at Doc. No. 5, at 25-41).

4          On July 28, 2010, the United States, representing the Republic of Ireland, filed a complaint

5  seeking the arrest and extradition of McCabe.  On July 30, 2010, McCabe made his initial

6  appearance in court.  Between August 4, 2010 and October 5, 2010, the court considered and denied

7  multiple motions seeking McCabe's release from custody.  *See* Doc. Nos. 17, 24, 37.  The court also

8  denied McCabe's motion for an intra-district transfer.  Doc. No. 37.

9          On December 17, 2010, a hearing was held on McCabe's motions for release from custody,

10 for discovery, and for a medical exam of McCabe by his physician.  Doc. Nos. 47-49.  The Court

11 denied bail and granted McCabe's motions for discovery and for a medical exam.  Doc. Nos. 59 &

12 64.  On December 28, 2010, McCabe filed an emergency motion for bail before the United States

13 Ninth Circuit Court of Appeal.  Doc. No. 63.  On January 13, 2011, the Ninth Circuit found no

14 special circumstances justifying the grant of bail and affirmed this Court's denial of bail.  Doc. No.

15 69.

16         On January 31, 2011, a hearing was held on the extradition request.  Doc. Nos. 72 & 74.

17 Kevin McNiff, a police sergeant of the Alameda County Sheriff's Office, testified to establish

18 McCabe's identity.  McNiff worked with Irish law enforcement to locate McCabe in Alameda and

19 arranged the November 2007 interview of McCabe by Irish authorities, Kevin Lavelle and John

20 Clancy, at the Alameda County Sheriff's Office.  *See* Ex. 3, Clancy Aff. ¶ 1.1; Ex. 4, Lavelle Aff. at

21 1.  Authenticated "[d]epositions, warrants, or other papers or copies" are admissible in extradition

22 proceedings.  18 U.S.C. § 3190; *see Manta v. Chertoff*, 518 F.3d 1134, 1146 (9th Cir. 2008).  Four

23 exhibits were admitted into evidence at the extradition hearing:  1) Ireland's extradition request for

24 McCabe; 2) the Treaty; 3) the original signed affidavit of Irish Detective Garda John Clancy; and

25 4) the original signed affidavit of Irish Inspector Kevin Lavelle, of *An Garda Siochana*, the Irish

26 Police Force.

27

28         [1]     Holland is an Attorney Adviser in the Office of the Legal Adviser for the Department of State and attested that there is a treaty in full force and effect between the United States and the Republic of Ireland. Ex. 2.

Ireland's extradition request was admitted as Exhibit 1 and is hard-bound, beribboned, and bears the Seal of the Minister for Foreign Affairs of Ireland.  Exhibit 1, Extradition Request by Ireland for Patrick McCabe (available at Doc. No. 1, pages 36-95).  It is comprised of three parts:

1)   Information required under Article VIII(2) regarding McCabe's identity, his location, and a brief statement of the facts.

2)   Documents required under Article VIII(3) regarding McCabe's identity and nationality attaching his original birth certificate; a 13 page, single-spaced statement of the facts indicating time and place of commission of the ten offenses; and a legal description of the offenses, statement of Irish law, and maximum penalties.

3)   Information and documents required under Article VIII(4) including authenticated copies of the ten arrest warrants issued by an Irish judge of the District Court; authenticated copies of the ten informations; and a statement of facts, by way of two affidavits from Peter McCormick and Helena Kiely setting forth reasonable grounds for believing that offenses have been committed and that McCabe committed them.

The affidavits of Clancy and Lavelle summarized their November 2007 interview of McCabe.  Peter McCormick, a Solicitor and Professional Officer in the Office of the Director of Public Prosecutions in Ireland, was responsible for making the determination of whether to charge McCabe with criminal offenses based on his alleged conduct regarding Thomas Lawrence, James Moran, Frank LaCumbre, Barry Ennis, and Anthony Corrigan (Offenses 1, 2, and 6-10).  Helena Kiely, a Solicitor and Professional Officer in the Office of the Director of Public Prosecutions in Ireland, was responsible for making the determination of whether to charge McCabe with criminal offenses based on his alleged conduct regarding Andrew Canavan (Offenses 3, 4 and 5).  In both detailed affidavits, the prosecutor summarizes the investigation conducted by the Irish Police Force (*An Garda Siochana*) and the grounds for believing that McCabe committed these ten offenses.

This Court has jurisdiction pursuant to 18 U.S.C. § 3184.  *See also* Crim. L.R. 7-1(b)(13).

## II. DISCUSSION

The extradition treaty between the United States and the Republic of Ireland of July 13,

**United States District Court**
For the Northern District of California

1983 ("Treaty")[2] provides that "[a]n offence shall be an extraditable offense only if it is punishable under the law of both Contracting Parties by imprisonment for a period of more than one year, or by a more severe penalty." Ex. 2, Holland Decl. attaching Treaty, Art. II, Sec. 1. McCabe argues that the offenses for which he has been charged are not extraditable offenses under the Treaty because they are not "punishable" in the United States because the statute of limitations has run.

**A.       Requirements for Extradition Certification**

The court's role in extradition proceedings is extremely limited. *Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006); *see* 18 U.S.C. §§ 3181, 3184. "Extradition is a matter of foreign policy entirely within the discretion of the executive branch, except to the extent that the statute interposes a judicial function." *Vo*, 447 F.3d at 1237 (quoting *Lopez-Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir. 1997)). Under 18 U.S.C. § 3184, where a person has been brought before the court on an extradition complaint, a certification of extraditability is proper where the following requirements have been met:

1)      the extradition judge is authorized to conduct extradition proceedings;
2)      the court has jurisdiction over the fugitive;
3)      the extradition treaty is in full force and effect;
4)      the crimes for which surrender is requested are covered by the treaties; and
5)      there is probable cause to believe that the fugitive committed the crimes.

*See Zanazanian v. United States*, 729 F.2d 624, 625-26 (9th Cir. 1984). If the Court finds that all of the requirements have been met, the findings are incorporated into a certificate of extraditability, which is "certified" and forwarded to the State Department. 18 U.S.C. § 3184. The Secretary of State makes the ultimate decision regarding whether to surrender McCabe to Ireland. 18 U.S.C. § 3186.

It is undisputed that the first three requirements are met. First, magistrate judges are expressly authorized to conduct extradition hearings pursuant to 18 U.S.C. § 3184 and the district

---

[2]      The Treaty is found in the Annex to the Instrument between the United States and Ireland (signed July 14, 2005), which implemented the Agreement on Extradition between the United States and the European Union (signed June 25, 2003). Ex. 2.

United States District Court
For the Northern District of California

1  court in this district specifically permits magistrate judges to conduct such proceedings under

2  Criminal Local Rule 7-1(b)(13).  *See Ward v. Rutherford*, 921 F.2d 286, 287-89 (D.C. Cir. 1990)

3  (holding that local rule that authorized magistrate judges to conduct extradition hearings did not

4  violate Article III of the United States Constitution).  Second, the Court has jurisdiction over

5  McCabe because he is present before the Court.  Third, there is an extradition treaty between the

6  United States and Ireland that is in full force and effect.  *See* Ex. 2.

7          McCabe disputes the fourth and fifth factors, arguing that the charged offenses are not

8  extraditable offenses under the Treaty and that there is insufficient evidence to establish probable

9  cause.

10 **B.      Dual Criminality**

11         Article II of the Treaty provides the dual criminality requirement and states that "[a]n

12 offence shall be an extraditable offense only if it is punishable under the law of both Contracting

13 Parties by imprisonment for a period of more than one year, or by a more severe penalty."[3] Art. II,

14 Sec. 1.

15         Dual criminality exists when the offense charged in the country seeking extradition "is

16 generally recognized as criminal in both countries."  *Factor v. Laubenheimer*, 290 U.S. 276, 300

17 (1933).  "It is well established that all the principle of dual criminality requires is that the particular

18 acts alleged constitute a crime in both jurisdictions.  The name by which the crime is described in

19 the two countries need not be the same, nor need the scope of the liability for the crimes be either

20 coextensive or the same in both countries."  *Emami v. U.S. Dist. Court for Northern Dist. of Cal.*,

21 834 F.2d 1444, 1450 (9th Cir. 1987) (internal citations removed) (affirming denial of habeas where

22 fraud offenses were extraditable to Germany).  The elements of the crime in both countries also need

23 not be the same.  *See Matter of Extradition of Russell*, 789 F.2d 801, 803 (9th Cir. 1986) (affirming

24

25         [3]  In his brief, McCabe states that Article XVIII  of the Treaty requires that for an offense
   committed before the date the Treaty was entered, the offense must have been a crime in both countries
26 at the time the offense was committed.  McCabe Trial Br. at 2; *see* Doc. No. 67-1.  The Treaty with
   Ireland that has been admitted as Exhibit 2 and that was in effect on June 1, 2010 when Ireland made
27 its extradition request, contains no such provision. Ex. 2; *see also* Treaty Doc. 109-14, 109th Cong. (2d
   Sess. 2006).  Article XVIII addresses termination of the Treaty by the parties.  The provision to which
28 McCabe refers was contained in an earlier version of the extradition treaty with Ireland.

United States District Court
For the Northern District of California

1    denial of habeas where conspiracy to defraud was an extraditable offense under treaty with Australia

2    despite the additional requirement of an overt act under California and U.S. federal law).

3        1.    Sexual Assault on Minors in Ireland and the United States

4        McCabe has been charged by Ireland with nine charges of indecent assault on the six

5    individuals identified above and one charge of attempted indecent assault on Thomas Lawrence.

6    The six individuals were approximately between the ages of 10 and 14 years old at the time of the

7    incidents.  Indecent assault is an offense at common law in Ireland,

8            constituting an assault accompanied by circumstances of indecency.  "Assault"
         has been defined by the Irish courts as an act by which one person intentionally or
9            recklessly causes another to apprehend immediate, unlawful personal violence.
         "Violence" has been interpreted by the Irish courts as also meaning any unlawful
10           touching of a person without consent or lawful excuse.  Circumstances of
         indecency are any circumstances capable of being considered as indecent by
11           right-minded persons.

12   Ex. 1 at Part 2(c) (available at Doc. No. 1, at page 59).  Attempted indecent assault is also an offense

13   at common law in Ireland and constitutes an attempt to commit indecent assault.  *Id.*  "Every attempt

14   to commit an indictable offence is regarded by the common law as an offence in itself."  *Id.*  The

15   maximum penalty for indecent assault and attempted indecent assault, for conduct occurring up to

16   June 6, 1981, is two years for the first offense and five years for a second or subsequent offense.  *Id.*

17   This meets the requirements of an extraditable offense under Article II.

18       The conduct of which McCabe is accused, sexual assault on a minor and attempted sexual

19   assault on a minor, are also crimes in the United States under California and federal law with

20   punishments of more than one year in prison.  *See* Cal. Penal Code §§ 288(a), 664(a);

21   18 U.S.C. § 2241(c).  McCabe does not dispute this.  Under California law,

22           [A]ny person who willfully and lewdly commits any lewd or lascivious act,
         including any of the acts constituting other crimes provided for in Part 1, upon or
23           with the body, or any part or member thereof, of a child who is under the age of
         14 years, with the intent of arousing, appealing to, or gratifying the lust, passions,
24           or sexual desires of that person or the child, is guilty of a felony and shall be
         punished by imprisonment in the state prison for three, six, or eight years.
25
26   Cal. Penal Code § 288(a).  The attempt to commit any lewd or lascivious act under § 288 is punished

27   under California law for half the term of imprisonment, which is for one and one half, three, or four

28   years.  Cal. Penal Code § 664(a).

**United States District Court**
For the Northern District of California

1    In addition, under federal law, knowingly engaging in or attempting to engage in a sexual

2    act by force or threat with a person under 12 years old, or between 12 and 15 years old if the victim

3    is at least 4 years younger than the defendant, shall be fined and imprisoned for not less than 30

4    years or for life.  18 U.S.C. § 2241(c).  Therefore, the dual criminality requirement in Article II is

5    satisfied for all ten offenses under California and federal law.

6        2.    Statute of Limitations

7    Having established that the conduct of which McCabe is accused is criminal in both Ireland

8    and the United States, the Court turns to McCabe's statute of limitations argument.

9    McCabe argues that the conduct of which he has been accused cannot be presently

10   punished in the United States because the statute of limitations has expired where the alleged

11   conduct occurred between 1973 and 1981.  McCabe reasons that a criminal offense for which the

12   statute of limitation has expired extinguishes the offense and reviving the expired statute of

13   limitations violates the ex post facto clause of the United States Constitution.  U.S. Const. art. I, §§

14   9, 10.  Therefore, McCabe argues that the charged offenses are not extraditable under the extradition

15   treaty with Ireland.

16   The extradition treaty with Ireland does not refer to a time bar or other statute of limitations

17   requirement, nor does it include a separate statute of limitations provision.  Extradition treaties

18   generally fall into four categories regarding statute of limitations:

19
20   1)    There is no statute of limitations requirement in the treaty, such as the
           Treaty with Ireland.  See Ex. 2.
21

22   2)    The treaty prohibits extradition for offenses time barred under the laws
           of either the requesting or requested party, such as the United States'
23         treaty with Mexico.  See Sainez v. Venables, 588 F.3d 713, 716-17 (9th
           Cir. 2009).
24

25   3)    The treaty prohibits extradition for offenses time barred under the laws
26         of the requesting party (i.e., the country requesting extradition), such as
           the United States' treaties with Canada and Australia.  See Murphy v.
27         U.S., 199 F.3d 599, 602-603 (2d Cir. 1999) (Canada); Kamrin v. U.S.,
           725 F.2d 1225, 1227 (9th Cir. 1984) (Australia).
28

16

4)     The treaty prohibits extradition for offenses time barred under the laws of the <u>requested</u> party (i.e., the country in which the fugitive has been located), such as the United States' treaties with South Korea and South Africa.  *See Man-Seok Choe v. Torres*, 525 F.3d 733, 740-41 (9th Cir. 2008) (South Korea); *Theron v. U.S. Marshal*, 832 F.2d 492, 498-99 (9th Cir. 1987) (South Africa) (separate and distinct analysis of dual criminality and statute of limitations), *abrogated on other grounds by U.S. v. Wells*, 519 U.S. 482 (1997) (holding materiality of falsehood is not an element of the crime under 18 U.S.C. § 1014 of knowingly making a false statement to a federally insured bank); *Clarey v. Gregg*, 138 F.3d 764, 767 (9th Cir. 1998) (interpreting extradition treaty with South Africa in *Theron*).

Here, Ireland is the requesting party (i.e., the country requesting extradition) and the United States is the requested party (i.e., the country in which the fugitive has been located).

The Ninth Circuit has held that the absence of a "specific treaty provision" applying the statute of limitations of the requested state (here, the United States) should be interpreted as the intention by the treaty parties that the statute of limitations of the requested state does not apply. *Kamrin*, 725 F.2d at 1227.  In *Kamrin*, the extradition treaty between the United States and Australia prohibited the extradition for offenses time barred under the laws of the <u>requesting</u> country (see category 3 above), which in that case was Australia.  Australia charged the fugitive with conspiracy to cheat and defraud and with defrauding persons.  Australia had no statute of limitation for these fraud crimes, but the United States had a five year statute of limitation for such crimes.  *Id*.  The Ninth Circuit rejected the fugitive's argument that the statute of limitations of the United States (the requested party) should apply.  *Id*.  The Ninth Circuit explained:

> Generally, **absent a specific treaty provision, the statute of limitation may be raised as a defense to criminal proceedings only after return to the requesting state**.  It may not always be clear whether a prosecution is time-barred, and the general rule allows the prosecuting state to resolve the issue.  The extraditee has an opportunity to raise the defense in the requesting country.  The provision in Article VII [of the extradition treaty with Australia] is consistent with the general rule.

> Given the general rule, **the absence of a contrary provision should be interpreted as an intention by the party states that the statute of limitation of the requested state does not apply**.  The parties did not intend for the United States statute of limitation to apply here.

*Id*. (internal citations omitted) (emphasis added); *see also Murphy*, 199 F.3d at 602-603 (Second Circuit adopting Ninth Circuit approach in *Kamrin* that the fugitive must raise statute of limitations as a defense during criminal proceedings in the requesting state, i.e., Canada).  The Ninth Circuit also rejected the fugitive's argument that the United States statutes of limitations should apply based on his right to due process.  *Id*. at 1227-28.

Applying *Kamrin* here, first, the general rule allows Ireland, as the requesting/ prosecuting party, to resolve the statute of limitations issue and McCabe may raise this defense in Ireland.  Second, the extradition treaty with Ireland does not contain a "contrary provision" applying the statute of limitations of the United States, as the requested party.  *See Kamrin*, 725 F.2d at 1227; Ex. 2, Treaty.  The extradition treaty with Ireland does not refer to any statute of limitations.  Ex. 2.  Therefore, the absence of such a statute of limitations provision "should be interpreted as an intention by [Ireland and the United States] that the statute of limitation of the requested state [i.e., the United States] does not apply."  *See Kamrin*, 725 F.2d at 1227.  If the United States and Ireland wanted to limit extradition to offenses where the statute of limitations has not run in either or both countries, such a requirement would have been expressly included in the Treaty as the United States has done in its extradition treaties with several other countries, as outlined above.

In addition, the Court notes that in *Markey v. U.S. Marshal Service*, 2010 WL 1541176 (N.D. Ind. 2010) (slip copy), an individual was extradited to Ireland for the offense of sex with a minor that allegedly occurred over 40 years ago in Ireland.  While a statute of limitations argument was not raised in that case, the district court denied Father Markey's habeas petition seeking relief from the magistrate judge's order issuing a Certification of Extraditability.  *Id*.; *see also In re: Extradition of Markey*, 2010 WL 610975 (N.D. Ind. 2010) (not reported) (magistrate judge's order granting request for certificate of extraditability).

Finally, the Court turns to *Stogner v. California*, 539 U.S. 607 (2003), the primary authority upon which McCabe relies for his statute of limitations argument.  In *Stogner*, the Supreme Court held that a state law extending the time in which prosecution is allowed violated the *ex post facto* clause of the Constitution when the law was applied to revive a prosecution that had been time-barred after the statute of limitations period expired.  *Id*. at 632-33, 618 (noting difference between

**United States District Court**
For the Northern District of California

statutes that extended the statute of limitations period before the period expired).  *Stogner*, however, is not on point because it does not address extradition treaties at all-- not the dual criminality requirement within extradition treaties or any statute of limitation requirement for extradition.  *See id*.  *Stogner* addresses the timely prosecution of a criminal offense in the United States.  *See id*.  In addition, if McCabe's application of *Stogner* to extradition treaties is correct, all extradition treaty provisions that applied the requesting party's statute of limitations period to offenses that were time barred in the United States would be unconstitutional.  This means that the statute of limitations provisions in the extradition treaties in category 3 above, such as the United States' treaties with Australia and Canada, are unconstitutional whenever there is an offense for which the United States statute of limitations is shorter than the requesting party's statute of limitations.  McCabe's reliance and application of *Stogner* to extradition treaties is misplaced.

In conclusion, the Court holds that the absence of a statute of limitations requirement for extradition in the Treaty indicates that Ireland and the United States did not intend for the statute of limitation of the requested state (here, the United States) to apply.  McCabe's argument impermissibly adds a statute of limitations requirement to the Treaty where there is none.  Therefore, McCabe's statute of limitations argument fails and does not bar extradition for any of the ten offenses with which he is charged.  McCabe may raise, should he choose to, statute of limitations as a defense in Ireland after his extradition.

## C.    Probable Cause

The Court next examines whether there is probable cause to believe that McCabe committed the crimes charged by Ireland.

### 1.    *Legal Standards*

The court must determine whether there is "probable cause to believe the [individual] guilty."  *Zanazanian*, 729 F.2d at 626.  In an extradition proceeding, "[t]he magistrate does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is <u>competent evidence</u> to support" a finding of probable cause as to the charged offense.  *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986) (emphasis added); *see also Choe*, 525 F.3d at 738-39.

1   Each offense in the extradition request must be supported by probable cause. *See Choe*, 525 F.3d at 738.

2        As stated above, the court's role in extradition proceedings is extremely limited. The

3   fugitive is not allowed to turn the extradition hearing into a full trial on the merits. *See Collins v.*

4   *Loisel*, 259 U.S. 309, 316-17 (1922). "[T]he country seeking extradition is not required to produce

5   all its evidence at an extradition hearing and it is not [the court's] role to determine whether there is

6   sufficient evidence to convict the accused." *Quinn*, 783 F.2d at 815. The Federal Rules of Criminal

7   Procedure and the Federal Rules of Evidence do not apply in extradition proceedings and are

8   specifically excluded. *See* Fed. R. Crim. Proc. 1(a)(5)(A); Fed. R. Evid. 1101(d)(3); *Manta*, 518

9   F.3d at 1146. "The credibility of witnesses and the weight to be accorded their testimony is solely

10  within the province of the extradition magistrate." *Quinn*, 783 F.2d at 815. Contradictory evidence

11  is admissible in an extradition proceeding, but explanatory evidence is not. *Mainero v. Gregg*, 164

12  F.3d 1199, 1207 n.7 (9th Cir. 1999), *superseded by statute on other grounds*, *Cornejo-Barreto v.*

13  *Seifert*, 218 F.3d 1004 (9th Cir. 2000). In *Mainero*, the Ninth Circuit explained that "evidence that

14  explains away or completely obliterates probable cause is the only evidence admissible at an

15  extradition hearing, whereas evidence that merely controverts the existence of probable cause, or

16  raises a defense, is not admissible." *Id.* (citing *Charlton v. Kelly*, 229 U.S. 447, 457-58 (1913)).

17  Therefore, evidence regarding credibility is generally not admissible unless it "completely

18  obliterate[s]" the evidence of probable cause. *See Choe*, 525 F.3d at 740. Accusations in the

19  extradition papers alone, however, are not sufficient to establish probable cause in an extradition

20  proceeding. *See id.* at 738.

21       2.    *Analysis*

22       Before turning to the analysis of probable cause for each of the ten offenses charged, the

23  Court first addresses McCabe's argument that probable cause for the offenses is not established

24  because statements in the affidavits of the Irish DPP officials responsible for making the

25  determination of whether to charge McCabe with criminal offenses (McCormick and Kiely) and *An*

26  *Garda* officials who interviewed McCabe in November 2007 (Clancy and Lavelle) are hearsay. *See*

27  Ex. 1, Extradition Request at part 3(c), McCormick Aff. (available at Doc. No. 1, pages 85-92);

28  Ex. 1, Extradition Request at part 3(c), Kiely Aff. (available at Doc. No. 1, pages 93-95); Ex. 3,

**United States District Court**
For the Northern District of California

Clancy Aff. (available at Doc. No. 68-2); Ex. 4, Lavelle Aff. (available at Doc. No. 68-3).  This argument fails because hearsay is admissible in extradition hearings.  *See Emami*, 834 F.2d at 1451; *Zanazanian*, 729 F.2d at 626-27 (rejecting fugitive's argument that the evidence was not competent to support probable cause because it was unsworn multiple hearsay).  As the Ninth Circuit has stated, "to eliminate hearsay from extradition proceedings would run counter to one of the primary objectives of bilateral extradition treaties, namely, to obviate the necessity of confronting the accused with the witnesses against him; ... requiring the demanding government to send its citizens to another country to institute legal proceedings would defeat the whole object of the treaty." *Id.* (internal quotation marks and citations removed).

The Ninth Circuit has also rejected related arguments challenging as unreliable reports and affidavits summarizing the evidence and/or witness statements, holding that such summaries are properly admitted and relied upon by the court in determining probable cause for extradition.  *See Choe*, 525 F.3d at 739-40 (magistrate judge properly considered Korean prosecutor's summary of testimony by witnesses); *Zanazanian*, 729 F.2d at 627 (police reports summarizing witness statements are competent evidence); *Emami*, 834 F.2d at 1450-52 (upholding extradition based on affidavit containing summaries of witness statements).  "But if the evidence submitted in the extradition papers is certified and authenticated in accordance with the admissibility requirements [under] the Treaty and 18 U.S.C. § 3190- which is not disputed here- the magistrate judge is authorized to consider it." *Choe*, 525 F.3d at 740 (internal foot notes and citations omitted). Therefore, the Court may properly consider the affidavits of McCormick, Kiely, Clancy, and Lavelle in making its probable cause determination.  *See* Exs. 1, Extradition Request at part 3(c), 3 and 4.

a)      *Offenses 1 and 2:  Thomas Lawrence*

Based on all of the filings in this matter, the testimony and evidence received at the hearing in this matter, and the above recitation of facts, the Court finds that credible evidence has been provided to this Court to establish probable cause that the fugitive, Patrick Joseph McCabe did commit the Irish common law offenses of one count of indecent assault and one count of attempted indecent assault against the victim Thomas Lawrence.

b)      *Offenses 3, 4 and 5:  Andrew Canavan*

Based on all of the filings in this matter, the testimony and evidence received at the hearing in this matter, and the above recitation of facts, the Court finds that credible evidence has been provided to this Court to establish probable cause that the fugitive, Patrick Joseph McCabe did commit the Irish common law offenses of three counts of indecent assault against the victim Andrew Canavan.

c)      *Offense 6:  James Moran*

Based on all of the filings in this matter, the testimony and evidence received at the hearing in this matter, and the above recitation of facts, the Court finds that credible evidence has been provided to this Court to establish probable cause that the fugitive, Patrick Joseph McCabe did commit the Irish common law offense of one count of indecent assault against the victim James Moran.

d)      *Offense 7:  Frank LaCumbre*

Based on all of the filings in this matter, the testimony and evidence received at the hearing in this matter, and the above recitation of facts, the Court finds that credible evidence has been provided to this Court to establish probable cause that the fugitive, Patrick Joseph McCabe did commit the Irish common law offense of one count of indecent assault against the victim Frank LaCumbre.

e)      *Offenses 8 and 9:  Barry Ennis*

Based on all of the filings in this matter, the testimony and evidence received at the hearing in this matter, and the above recitation of facts, the Court finds that credible evidence has been provided to this Court to establish probable cause that the fugitive, Patrick Joseph McCabe did commit the Irish common law offense of two counts of indecent assault against the victim Barry Ennis.

f)      *Offense 10:  Anthony Corrigan*

Based on all of the filings in this matter, the testimony and evidence received at the hearing in this matter, and the above recitation of facts, the Court finds that credible evidence has been provided to this Court to establish probable cause that the fugitive, Patrick Joseph McCabe did

1   commit the Irish common law offense of one count of indecent assault against the victim Anthony

2   Corrigan.

3   ### III.  CONCLUSION

4   Accordingly, the Court hereby certifies the above findings to the Secretary of State in order

5   that a warrant may issue for the surrender of Patrick Joseph McCabe to the Republic of Ireland, and

6   orders that Mr. McCabe be committed to the custody of the United States Marshals Service for

7   surrender to Ireland pursuant to 18 U.S.C. § 3184.

8

9   ### CERTIFICATE OF EXTRADITABILITY

10  NANDOR J. VADAS, United States Magistrate Judge.

11  Having heard and considered the evidence in the above-captioned matter under

12  18 U.S.C. § 3184, et seq., this Court finds and orders as follows:

13  1.  This Court has subject matter jurisdiction to conduct the extradition proceedings.

14  2.  This Court has personal jurisdiction over Patrick Joseph McCabe.

15  3.  This Court is authorized to conduct the extradition proceeding under Criminal Local

16  Rule 7-1(b)(13) and upon a referral from U.S. District Court Judge Richard Seeborg.

17

18  4.  There exists a valid extradition treaty between the Republic of Ireland and the United

19  States ("Treaty"), and that Treaty is in full force and effect.  Ex. 2.

20  5.  The offenses of indecent assault and attempted indecent assault of the common law of

21  Ireland are extraditable offenses under the terms of the Treaty.

22  6.  Ireland has provided the documents and information required for extradition under

23  Treaty Article VIII(2), including "(a) information which will help to establish the identity of the

24  person sought; (b) the location of the person if known or, if it is not known, a statement of that

25  effect; and (c) a brief statement of the facts of the case."  Ex. 1 at Part 1.

26

27  7.  Ireland has provided the documents required by Treaty Article VIII(3), specifically

28  documents containing "(a) as accurate a description as possible of the person sought, together with

**United States District Court**
For the Northern District of California

any other information which will assist in establishing the person's identity and nationality; (b) a statement of the pertinent facts of the case, indicating as accurately as possible the time and place of commission of the offence; and (c) the legal description of the offence and a statement of the maximum penalties therefor and the text of the law setting forth the offence or, where this is not possible, a statement of the relevant law." Ex. 1 at Part 2.

8.  Ireland has provided the documents required by Treaty Article VIII(4), specifically authenticated copies of the ten arrest warrants issued by an Irish judge of the District Court; authenticated copies of the ten informations; and a statement of facts, by way of two affidavits from Peter McCormick and Helena Kiely, "setting forth reasonable grounds for believing that an offence has been committed and that the person sought committed it." Ex. 1 at Part 3.

9.  There is competent legal evidence to provide a reasonable basis to believe that Patrick Joseph McCabe, the person whose extradition is sought, committed the nine offenses of indecent assault and one offense of attempted indecent assault under the common law of Ireland.

Accordingly, the Court hereby certifies the above findings and all of the submitted documents and evidence to the Secretary of State in order that a warrant may issue for the surrender of  Patrick Joseph McCabe to the Republic of Ireland, and orders that Mr. McCabe be committed to the custody of the United States Marshals Service for surrender to Ireland pursuant to 18 U.S.C. § 3184.  IT IS FURTHER ORDERED that a copy of all testimony taken before this Court, and all documents received in evidence, be forwarded to the Secretary of State by the U.S. Attorney's Office.

**IT IS SO ORDERED.**

Dated:  February 22, 2011

_____
NANDOR J. VADAS
United States Magistrate Judge